UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| ROBERTA STEELE, | ) |
| Plaintiff, | ) Case No. 19-cv-05334 |
| v. | ) Hon. Steven C. Seeger |
| FOX VALLEY PARK DISTRICT, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Roberta Steele spent two decades of her career working for the Fox Valley Park District. It ended badly. Fox Valley ultimately terminated her for missing deadlines, failing to keep a computer system up to date, and failing to communicate. But Steele (who is 64) believes that the real reason for her termination was her age. So she filed a claim under the Age Discrimination in Employment Act. The theory of the case is that new, younger management took over Fox Valley and favored younger employees at the expense of older ones.

Fox Valley now moves to dismiss. The gist of the motion is that Steele pled herself out of court by alleging that there were legitimate reasons for her termination. For the reasons stated below, the Court denies Fox Valley's motion to dismiss.

**Background**

At the motion to dismiss stage, the Court must accept the well-pleaded allegations of the complaint as true. *See Lett v. City of Chicago*, 946 F.3d 398, 399 (7th Cir. 2020). The time to test the truth or falsity of the allegations comes later.

Plaintiff Roberta Steele worked for Fox Valley Park District, which provides public parks and recreation to the surrounding community, for almost two decades. *See* First Am. Cplt. ¶¶ 12, 14–15 (Dckt. No. 18). For most of her tenure, she had a positive work experience. She was a "successful and respected member of the FVPD supervisory staff," and "met or exceeded" Fox Valley's business expectations. *Id.* at ¶¶ 1, 13. She received positive performance reviews and merit-based salary increases on a regular basis from 1998 to 2016. *Id.* at ¶¶ 14–15.

Things took a turn for the worse in 2016, when Fox Valley "started using new computer software and hired new, significantly younger, management staff." *Id.* at ¶ 1. Around that time, Fox Valley replaced Steele's direct supervisor with a "much younger person" named Lauren Jansen. *Id.* at ¶ 17. Steele was born in 1956, so in 2016 and 2017 she was in her early 60s. *Id.* at ¶ 8. Steele estimates that Jansen, her new supervisor, was approximately thirty years old when Fox Valley added her to the team in 2016. *Id.* at ¶ 18. So Steele was twice her age.

Soon after Jansen arrived, Fox Valley hired another young woman, Krista Mulready, to replace the Facility Manager of the "Prisco" facility. *Id.* at ¶¶ 19–20. Mulready was responsible for managing all employees at the Prisco facility, including Jansen and Steele. *Id.* at ¶ 21. Both Mulready and Steele were younger than their predecessors. *Id.* at ¶¶ 17, 19. New, younger management took the reins.

"[T]hings were changing," and not for the better. *Id.* at ¶ 22. New management changed the workplace culture. *Id.* After the transition, Steele noticed a pattern of preferential treatment for younger workers. *Id.* In fact, she remembers that the younger workers were treated "materially better." *Id.* The complaint includes a number of specific examples. *Id.* at ¶¶ 24–36.

Mulready and Jansen "held younger and older employees to different sets of performance standards." *Id.* at ¶ 25. They "let younger employees get away with performance issues, but subjected older workers to discipline for the same or similar infractions." *Id.* at ¶ 26.

Mulready, in particular, kept the younger employees up to date on the latest information, but kept the older workers "in the dark." *Id.* at ¶ 27. She oversaw changes to a facility that "made it physically more difficult for older employees to do their jobs," without accommodating their physical limitations. *Id.* at ¶ 28. Mulready "humiliated" older workers by requiring them to obtain information from their "younger subordinate staff," instead of "openly sharing information with everyone." *Id.* at ¶ 29.

Mulready also "disfavor[ed]" older employees. *Id.* at ¶ 30. She gave younger employees "privileges of authority," but denied the older (and more experienced) workers the same opportunities. *Id.* To make matters worse, Mulready used buzzwords like "stale" and "stagnant" when she referred to older workers. *Id.* at ¶ 31. And she described older employees as "not up to the task" and "not able to handle" responsibilities. *Id.*

Work piled up for older employees, while younger employees received benefits such as training. Older employees were saddled with "[n]ew and compounding responsibilities," but "this was not happening to younger employees." *Id.* at ¶ 32. Instead, "[y]ounger employees received computer training, whereas older employees were denied the same opportunity." *Id.* at ¶ 33.

When problems arose, older employees shouldered the blame. "In some circumstances, the blame for performance issues was shifted from younger employees to their older co-workers." *Id.* at ¶ 34.

The poor treatment of older employees led to an exodus. "[O]lder employees at Prisco were being forced out and treated very poorly. By contrast, younger employees were being hired and trea[t]ed more favorably." *Id.* at ¶ 35. The disfavored treatment drove out "about a dozen older employees or volunteers" over the course of one year. *Id.* at ¶ 36.

The shift to younger management coincided with a change in technology. Fox Valley implemented a new software for recreation management called RecTrac. *Id.* at ¶ 37. As part of the software implementation, Fox Valley assigned a team of employees – exclusively comprised of younger workers – to act as the training committee. *Id.* at ¶ 38. As Steele sees it, if she were on the committee, she would have received adequate software training. *Id.* at ¶ 39. Instead, she never received the necessary training. *Id.* at ¶¶ 39–40. And while she made multiple requests for additional training, her requests fell flat. *Id.* at ¶¶ 33, 40, 44, 53.

When the software implementation was complete, Fox Valley expected its employees to use the RecTrac software to compile information about programming, class schedules, and room assignments. *Id.* at ¶¶ 41–42. Steele alleges that no one informed her of the new protocol. *Id.* Her obliviousness to the change caught up with her one day, when the acting facilities manager questioned her about "programming and using RecTec." *Id.* at ¶ 43. The complaint doesn't delve into the nature of the questioning. But in response to the questioning, Steele requested additional RecTrac training. *Id.* at ¶ 44. Like before, she did not receive it. *Id.*

Eventually, Steele's lack of experience with RecTrac caused problems. In April or May 2017, she was working with the Fox Valley dance coordinator to enter the dance program's summer registration information into RecTrac. *Id.* at ¶ 45. The duo "experienced an issue entering information with RecTrac," which "created inaccuracies with the programming data." *Id.* at ¶ 47. So, they asked the Program Manager (who was assigned to help employees with the

4

system) for help. *Id.* at ¶¶ 48–49. Eventually, the Program Manager told Steele and the dance coordinator that the system problem was fixed. *Id.* at ¶ 51.

He was wrong. Mulready told Steele that the summer registration information remained inaccurate. *Id.* at ¶ 52. Mulready blamed Steele – and only Steele – for the errors. *Id.* The other two employees shouldered none of the blame. *Id.* Unlike her coworkers, Steele received (unspecified) disciplinary measures. *Id.* Once again, Steele requested additional training. *Id.* at ¶ 53. Once again, she received none. *Id.*

At that point, Mulready and Jansen "**Set Ms. Steele Up to Fail.**" *Id.* at p.7 (quoting the heading) (bold in original). In May 2017, Fox Valley was in the process of updating its fall programming in RecTrac. *Id.* at ¶ 54. As part of that project, Mulready directed Steele to update "all dance class descriptions" in the system. *Id.* On June 5, Mulready gave Steele a 48-hour deadline: she asked Steele to complete the updates by June 7 at 5:00 p.m. *Id.* at ¶ 56.

But, as Steele tells it, an intervening deadline made Mulready's deadline impossible to meet. The very next day, on June 6, Jansen – Steele's direct supervisor – asked Steele to submit the fall registration materials to her first, and to send them by the morning of June 7. *Id.* at ¶ 57. That is, Jansen wanted to see the registration materials hours in advance of the 5:00 p.m. deadline, thus "cutting the time Ms. Steele had to finish the project in half." *Id.* Younger employees faced Mulready's deadline of 5:00 p.m., but unlike Steele, they "were not given an earlier deadline at the very last minute." *Id.* at ¶ 58.

Steele stayed late on June 6 and June 7, working on the registration "into the night." *Id.* at ¶ 59. But it was not enough. Steele did not meet the deadline. She kept Jansen in the loop, telling her that she was going to miss the deadline, and discussing the content of the dance

5

department's fall registration. *Id.* at ¶ 60. In the end, Steele submitted the materials to both Mulready and Jansen at 11:00 p.m. on June 7, hours after the deadline. *Id.* at ¶ 61.

A week later, she was let go. On June 15, 2017, Mulready and Fox Valley's HR manager called Steele into a meeting. They informed Steele that she was terminated for "failing to meet deadlines, failure to keep information up to date in RecTrac, and lack of communication." *Id.* at ¶¶ 10, 62–63.

Steele fought to keep her position. She asked for training, and requested a Performance Improvement Plan. *Id.* at ¶ 64. But Fox Valley's management remained steadfast in the termination decision. As Steele tells it, Fox Valley ultimately replaced her with a younger worker. *Id.* at ¶ 66.

After her firing, Steele filed her Charge of Discrimination with the Equal Employment Opportunity Commission on April 9, 2018. *Id.* at ¶ 4. She received a Notice of Suit Rights on May 16, 2019, and sued Fox Valley within 90 days of receipt of the letter. *Id.* at ¶¶ 5–6.

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not the merits of the case. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive, the complaint must give the defendant fair notice of the basis for the claim, and it must be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## Discussion

Steele filed a one-count complaint against Fox Valley. *See* First Am. Cplt. ¶¶ 67–77 (Dckt. No. 18). She alleges that Fox Valley discriminated against her based on her age in violation of the Age Discrimination in Employment Act ("ADEA"). *See id.*

Congress enacted the ADEA to "promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; [and] to help employers and workers find ways of meeting problems arising from the impact of age on employment." 29 U.S.C. § 621(b); *Carson v. Lake County, Indiana*, 865 F.3d 526, 532 (7th Cir. 2017). The ADEA makes it unlawful for an employer to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). The ADEA's protections apply to employees who are at least 40 years old. *Id.* at § 631(a). Steele is in her 60s, so the ADEA protected her from age discrimination during the period in question. *See* First Am. Cplt. ¶ 8 (Dckt. No. 18).

To prove a claim for disparate treatment under the ADEA, Steele must show that "age was the 'but-for' cause of the challenged employment action." *Carson*, 865 F.3d at 532 (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009)); *see also Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 719 (7th Cir. 2019). That is, "in the ADEA context, it's not enough to show that age was *a* motivating factor. The plaintiff must prove that, but for [her] age, the adverse action would not have occurred." *Skiba*, 884 F.3d at 719 (quoting *Martino v. MCI Commc'ns Serv., Inc.*, 574 F.3d 447, 455 (7th Cir. 2009)) (emphasis in original).

7

Steele's case is still at the pleadings stage, so she does not need to *prove* anything just yet. Down the road, there are two ways to prove a disparate treatment claim under the ADEA. She "may proceed by introducing direct or circumstantial evidence that her employer took an adverse action against her because of her age." *Carson*, 865 F.3d at 532–33 (citation omitted). Or she can proceed under the burden-shifting framework adapted from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Carson*, 865 F.3d at 533. That framework requires a plaintiff to prove her prima facie case by showing that "(1) she is a member of a protected class, (2) she was meeting the defendant's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees who were not members of her protected class were treated more favorably." *Simpson v. Franciscan Alliance, Inc.*, 827 F.3d 656, 661 (7th Cir. 2016) (citing *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 880 (7th Cir. 2016)). Once she has established a prima facie case, the defendant must "articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual." *Id.* (citation omitted).

At the pleadings stage, however, a plaintiff must carry a light burden. "The pleading requirement for employment-discrimination claims is minimal." *See Clark v. Law Office of Terrence Kennedy Jr.*, 709 F. App'x 826, 828 (7th Cir. 2017). Indeed, a plaintiff "need only identify the type of discrimination, when it occurred, and by whom." *Id.* (collecting cases); *see also Samovsky v. Nordstrom, Inc.*, 619 F. App'x 547, 548 (7th Cir. 2015) ("'I was turned down for a job because of my race' is all a complaint has to say.") (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008)); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir.

8

2010) (requiring a complaint to identify "the type of discrimination," "by whom," and "when") ("This is all that she needed to put in the complaint.").

The pleading standards are a light load, not a heavy lift. So courts in this District regularly find that ADEA claims pass muster under Rule 12, and allow the parties to gather facts in discovery. *See, e.g., Cover v. OSF Healthcare Sys.*, 2020 WL 3975467, at *3 (N.D. Ill. 2020) (denying motion to dismiss over plaintiff's objection that the facts didn't allege age was the but-for cause); *Love v. Bd. of Educ. of City of Chicago*, 2020 WL 247378, at *4 (N.D. Ill. 2020) (denying motion to dismiss because allegations could support a finding of discrimination, and noting the "limited value" of citing summary judgment cases given the minimal pleading standard); *Kreptowski v. Corrugated Supplies Co. LLC*, 2018 WL 1378179, at *2 (N.D. Ill. 2018) (denying motion to dismiss ADEA claims); *Garza v. Illinois Inst. of Tech.*, 2018 WL 264198, at *2 (N.D. Ill. 2018) (same).

The Seventh Circuit weighed the light load that a plaintiff must carry in *Clark v. Law Office of Terrence Kennedy Jr.*, 709 F. App'x 826, 829 (7th Cir. 2017). Clark alleged that her employer treated her badly because of her age (she was 51). The law firm excluded her from meetings, took away her assignments, lied about her performance, and suspended her from work. *Id.* at 828–29. But younger, comparable employees faced no such adversities. *Id.* The Seventh Circuit had little trouble concluding that the complaint satisfied the minimal pleading requirements.

Steele's allegations are more than enough to state a claim. She "identif[ied] the type of discrimination, when it occurred, and by whom." *Clark*, 709 F. App'x at 828. The complaint alleges that Steele suffered from age discrimination, and it recounts a number of specific examples of alleged mistreatment. Fox Valley held older employees to higher standards, and

gave them less support. Older employees received "different sets of performance standards," and suffered disproportionate discipline for infractions. *See* Cplt. ¶¶ 25, 26. Older employees received more work (*id.* at ¶ 32), less training (*id.* at ¶ 33), more blame (*id.* at ¶ 34), and less information (*id.* at ¶ 27).

The disfavored treatment came to a head when Fox Valley began using the RecTrac software. *Id.* at ¶¶ 37–66. The complaint alleges that Fox Valley did not give older employees adequate training on how to use the new registration system. *Id.* at ¶¶ 38–40. Steele repeatedly requested training, but received none. *Id.* at ¶¶ 44, 53, 64. So when the time came to update the registration system, Steele failed to meet deadlines, leading to her termination. *Id.* at ¶¶ 62–65.

Fox Valley thinks that Steele pled herself out of court by admitting that she missed deadlines. *See* Def.'s Mem. in Supp. of Mtn. to Dismiss, at 2–3 (Dckt. No. 21). The failure to meet deadlines, so the argument goes, means that she did not live up to expectations, which means that there was a non-discriminatory reason for her termination. *Id.* "Plaintiff's own pleading admits that her job performance was a problem." *Id.* at 5.

Fox Valley is getting ahead of itself. Steele's case would not come to an end even if the Court assumed that missing deadlines was a facially legitimate, non-discriminatory reason for firing her. She would still have an opportunity to show – under the *McDonnell Douglas* burden-shifting framework – that Fox Valley used the missed deadlines as a mere pretext for age discrimination. *See Simpson v. Franciscan Alliance, Inc.*, 827 F.3d 656, 661 (7th Cir. 2016). That opportunity comes later, at summary judgment or trial. At the pleadings stage, it is enough for Steele to allege that Fox Valley discriminated against her based on her age. *See Clark v. Law Office of Terrence Kennedy Jr.*, 709 F. App'x 826, 828 (7th Cir. 2017).

10

Fox Valley's argument also misses the thrust of the complaint. Steele admits that she missed deadlines, but she missed the deadlines because she didn't receive training. And she didn't receive the training because Fox Valley didn't offer it to older employees. So the disfavored treatment set her up to fail. *See* Cplt. at 7 (alleging that the Park District "**Set Ms. Steele Up to Fail**") (bold in original). She didn't meet expectations *because* she didn't have what she needed, and she didn't have what she needed *because* her employer discriminated against her.

Imagine, for example, that a trucking company required a driver to haul goods from City A to City B by a certain deadline. And then imagine that the trucking company refused to allow the truck driver to fill up the tank, and did so for discriminatory reasons. And then the truck driver didn't deliver the goods on time, and got fired. The fact that the driver missed the deadline wouldn't mean that there was a non-discriminatory basis for the termination. A jury could reasonably find that the but-for cause of the termination was the discriminatory refusal to gas up the truck.

The same rationale applies here. The complaint alleges a plausible claim that the but-for cause of her termination was the discriminatory act of refusing to give plaintiff what she needed to do her job. It's a make-bricks-without-straw form of discrimination.

Steele's allegation may or may not pan out, but at this early stage, it is more than enough to allow fact-gathering. At this point, the issue is not whether age discrimination was the but-for cause of her termination. Instead, the issue is whether the complaint alleges a plausible claim that age discrimination was the but-for cause of her termination. *See Gross v. FBL Fin. Servs.*, 557 U.S. 167, 177–78 (2009); *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). It does.

Fox Valley also takes issue with some of the alleged examples of discrimination. *See* Def.'s Mem. in Supp. of Mtn. to Dismiss, at 2 n.1 (Dckt. No. 21). For example, the complaint alleges that Fox Valley "humiliated" older workers by requiring them to obtain information from younger workers. *See* Cplt. at ¶ 29. True, that allegation does not seem to move the needle very much (if at all). But its inclusion does not doom the complaint. "The fact that [Steele] included other, largely extraneous facts in her complaint does not undermine the soundness of her pleading." *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010); *see also Clark*, 709 F. App'x at 829 (refusing to dismiss a complaint simply because "some of Clark's allegations do not amount to discrimination").

Fox Valley makes one last argument, late in the game. Fox Valley argues that any conduct before June 13, 2017 is time-barred. *See* Reply in Supp. of Mtn. to Dismiss, at 7 (Dckt. No. 25). A plaintiff seeking to file an ADEA claim must file with the EEOC within 300 days of the unlawful conduct. *See* 29 U.S.C § 626(d)(1); *see also Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 890–91 (7th Cir. 2016). Because Steele filed the charge with the EEOC on April 9, 2018, *see* First Am. Cplt. ¶ 4, the alleged misconduct had to occur in the preceding 300 days, starting June 13, 2017. So the complaint, Fox Valley argues, was too late.

But Fox Valley's argument was too late, too. Fox Valley unveiled its argument in its reply brief. *See* Reply in Supp. of Mtn. to Dismiss, at 7 (Dckt. No. 25). While a reply brief may respond to arguments raised in the response brief, "arguments raised for the first time in a reply brief are deemed waived." *Danilkowicz v. City of Park Ridge*, 2013 WL 4401428, at *3 (N.D. Ill. 2013) (quoting *Griffin v. Bell*, 694 F.3d 817, 822 (7th Cir. 2012)); *Dyson, Inc. v. Sharkninja Operating LLC*, 2016 WL 4720019, at *1 (N.D. Ill. 2016) (citing *Cent. States, Se. and Sw. Areas*

*Pension Fund v. White*, 258 F.3d 636, 640 n. 2 (7th Cir. 2001)). A reply brief must reply to an argument, not build a new one.

The timeliness argument is waived – for now, that is. The Court will not address an argument that does not appear in the motion to dismiss. The non-movant had no opportunity to respond, and this Court does not have the benefit of the adversary process. Still, Fox Valley can raise its timeliness argument in a motion for summary judgment.

## Conclusion

For the above reasons, the Court denies Fox Valley's motion to dismiss the First Amended Complaint [19].

Date:   September 2, 2020

Steven C. Seeger
United States District Judge