**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ROBERTA STEELE, | |
| Plaintiff, | |
| v. | Case No.: 19-cv-05334 |
| | Honorable Steven C. Seeger |
| FOX VALLEY PARK DISTRICT | |
| Defendant. | **JURY TRIAL DEMANDED** |

**PLAINTIFF'S MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Fox Valley Park District's ("Defendant", the "District", or "FVPD") Motion for Summary Judgment must be denied. The record is replete with evidence permitting a reasonable factfinder to infer that the decision to terminate Roberta Steele ("Plaintiff", or "Ms. Steele") was the result of unlawful age discrimination. The record contains circumstantial evidence of both demonstrable age bias at FVPD and that the reasons for terminating Ms. Steele were pretextual. The summary judgment analysis requires the evaluation of the totality of the evidence, as a whole. Such an evaluation establishes that it is reasonable to infer that age was the factor that made the difference when FVPD terminated Ms. Steele.

## II. FACT SUMMARY

Plaintiff incorporates her Local Rule 56.1(b)(3) Statement of Additional Facts That Require the Denial of Summary Judgment and Response to Movant's Statement of Material Facts in Opposition to Defendant's Motion for Summary Judgment, filed with this memorandum, setting forth the facts material to the Court's analysis. (Dkt. 68, Plaintiff's Local Rule 56.1(b)(3) Statement of Additional Facts ("SOAF") and Response to Statement of Facts ("RSOF"))

## III. SUMMARY JUDGMENT STANDARD

The singular question that matters in a discrimination case is whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's age caused the discharge. *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). The Court's role is not to decide who is right, or to pick which side is telling the most convincing story. The Court should not "weigh conflicting evidence . . . or make credibility determinations." *Omnicare v. UnitedHealth*

*Group, Inc.*, 629 F.3d 697, 704 (7th Cir. 2011) (citations omitted). Instead, the Court simply "determine[s] whether there is a genuine issue for trial." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). The Court must "constru[e] the facts and mak[e] reasonable inferences in favor of the nonmovant." *H.P. by & Through W.P. v. Naperville Cmty. Unit Sch. Dist. #203*, 910 F.3d 957, 960 (7th Cir. 2018). A court must deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011).

## IV. AGE DISCRIMINATION LEGAL ANALYSIS

To defeat summary judgement Ms. Steele is required to set forth sufficient facts to which may lead a reasonable fact finder to infer that age was the "but-for cause", or, in other words, that age "played a role" in the FVPD's decision-making process and had a "determinative influence" in causing her termination. *Gross v. FBL Fin. Servs.*, 557 U.S. 167 (2009), citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993), *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 141 (2000), *Mullin v. Temco Mach., Inc.*, 732 F.3d 772, 776 (7th Cir. 2013)(reversing summary judgment for employer and finding that circumstantial evidence supported plaintiff's claim that he was fired because of his age), *Lindsey v. Walgreen Co.,* 615 F.3d 873, 876 (7th Cir. 2010) (to "establish liability under the ADEA [plaintiff] had to show that her age was the determinative factor."), and *Straub v. Jewel Foods,* No. 1:17-cv-6401, *15-16 (N.D. Ill. Apr. 20, 2020) (Judge Steven C. Seeger).

"An ADEA plaintiff may proceed by introducing direct or circumstantial evidence that her employer took an adverse action against her because of her age[.]" *Carson v. Lake Cnty.*, 865 F.3d 526, 532-33 (7th Cir. 2017). "Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the 'direct' evidence

does so, or the 'indirect' evidence. Evidence is evidence." *Ortiz*, 834 F.3d at 765. "Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Desert Palace, Inc. v. Costa,* 539 U.S. 90, 100 (2003), citing *Rogers* v. *Missouri Pacific R. Co.*, 352 U.S. 500 (1957).

V. **CIRCUMSTANTIAL EVIDENCE OF AGE DISCRIMINATION**

    a. **New Management Comes In, the Culture Changes**

A reasonable trier of fact may infer from the circumstantial evidence in the record that it was the goal of new and young management to change the culture at FVPD and push the older employees out. From late 2016 to early 2017, FVPD promoted and hired a young management team to run the Prisco Facility: Ms. Ijams (36) was promoted to Director of Recreation; Mr. Hayes (31) was hired as the Superintendent of Recreation; Ms. Mulready (37), was hired as the Prisco Facilities Manager; and Ms. Jansen (27) was hired as the Prisco Performing Arts Manager. (SOAF ¶4) It was also around this time that FVPD set out a new focus, an emphasis and need to "keep everything fresh," that "we need new" and it used words and phrase like "push for innovation." (*Id*. ¶5)

    b. **Ms. Mulready was Biased in Favor of Younger Employees and Against Older Employee**

Ms. Mulready's biased conduct, inferring a preference for young employees and a bias against older employees is relevant to the present inquiry. *Hasan v. Foley & Lardner LLP,* 552 F.3d 520, 528 (7th Cir.2008) (Evidence of discriminatory animus on the part of "someone who provided input into the adverse employment decision" is relevant). Prisco supervisors employees agree that after Ms. Mulready came to the District she repeatedly demonstrated bias in favor of younger employees and that they, the older employees, were subjected to false or inaccurate disciplinary measures, rude and demeaning treatment, lack of training, stripping of autonomy and

authority, and other harassing and otherwise adverse employment actions. (RSOF ¶76). When Ms. Steele's replacement's performance dropped off precipitously, Ms. Mulready gave her another chance and repeatedly referenced her young age in doing so. (*Id*. ¶33) She extended deadlines for younger employees and let them get away with performance issues, but disciplined and fired older employees for the same or similar infractions. (SOAF ¶¶9,10, and 30 and RSOF ¶76) Ms. Mulready kept younger employees informed and updated while simultaneously withholding information from older employees. (SOAF ¶30) She was friendly, kind and engaging with younger employees but harsh and rude to older employees. (*Id*. ¶31) She refused to accommodate the physical limitations of older employees. (*Id*. ¶32) Ms. Mulready used words like "stale" and "stagnant" or "not up to the task" or "not able to handle" to humiliate, refer to and describe older employees, referred to young employees as "new blood," and said it was time to "phase out the old," when terminating an older employee. (*Id*. ¶¶24-25, 33)

FVPD argues that these statements are "stray remarks" and were not about age, are taken out of context, or are too ambiguous to carry any weight. (Dkt. 65 pg. 14) Whether these remarks were about older employees is a contested issue of fact. (SOAF ¶33 and RSOF ¶¶24-25) Regardless, "comments directed at other employees in the protected group is one type of circumstantial evidence that can support an inference of discrimination" and "the task of disambiguating ambiguous utterances is for trial, not for summary judgment." *Vega v. Chicago Park Dist.,* 954 F.3d 996, 1005 (7th Cir. 2020) and *Shager v. Upjohn Co.,* 913 F.2d 398, 402 (7th Cir. 1990).  The import and meaning of these statements may persuade a jury to infer an inference of age discrimination and is appropriate to bring to a jury.

    c.  **Exodus of Older Employees and FVPD Replaces the Old with the Young**

Within a year, older employees were undervalued, treated poorly and pushed out, fired, or forced to take early retirement. (SOAF ¶¶6-7) This included, but was not limited to: Ms. Steele (61), Ms. Huber (50), Ms. Daniels (61), Mr. Morris (age 81): Mr. Weisshaar (age 64), Ms. Adams (age 79), Mr. Huber (age 58), Mr. DeKing (age 75), Mr. Pierce (age 67), Ms. Hereks (age 62), Mr. Johnson (age 70), Ms. Felten (age 65), Mr. Hernandez (late 50's or early 60s), Ms. Johnson (late 50s), and Ms. Peterson (mid 50s). (*Id*. ¶¶6-7)

As the older employees exited the District, younger employees were hired to replace them. (SOAF ¶8) Replacing older employees with younger employees, is persuasive evidence that age was a determinative factor. *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 313 (1996), *Olson v. N. FS, Inc*., 387 F.3d 632, 635-36 (7th Cir. 2004), *Robin v. Espo Eng'g Corp.,* 200 F.3d 1081, 1089-90 (7th Cir. 2000). At Prisco, all of the oldest supervisory employees were fired and replaced by younger employees. Ms. Steele, age 61, was replaced by Ms. O'Brien, age 24. (SOAF ¶8). Ms. Aviles, age 40, took over the duties of Ms. Daniels, age 61. (*Id*.) Ms. Huber, age 50, was replaced by Ms. Rackmyer, age 43. (*Id*.) Mr. Martinez, age 34, was the only Prisco supervisory employee to avoid termination. (*Id*. ¶6)

It is true that the 7-year difference between Ms. Huber and Ms. Rackmyer is not a "presumptively substantial difference in age[.]" *Kariotis v. Navistar Int'l Transp. Corp.,* 131 F.3d 672 (7th Cir. 1997). However, the 7th Circuit previously explained that "the line we draw is not so bright as to exclude cases where the gap is smaller[.]" *Hartley v. Wisconsin Bell, Inc.,* 124 F.3d 887, 893 (7th Cir. 1997) and *EEOC v. Board of Regents,* 288 F.3d 296, 302 (7th Cir. 2002). As was the case in *Board of Regents*, here, "[t]he unavoidable fact is that the […] oldest employees were the only ones terminated" and this "supports an inference of discrimination." *Id*. at 302-03.

d. **Other Older Employees Complain of Age Discrimination**

The record of "other acts" and "me too" evidence in this matter is admissible circumstantial evidence establishing the inference of FVPD's intent to discriminate based on age. *Vega,* 954 F.3d at 1005. The Seventh Circuit has repeatedly held that "behavior toward …other employees in the protected group is one type of circumstantial evidence that can support an inference of discrimination." *Id.*, citing *Hasan v. Foley & Lardner LLP,* 552 F.3d 520, 529 (7th Cir. 2008), and quoting *Hemsworth v. Quotesmith.Com, Inc.,* 476 F.3d 487, 491 (7th Cir. 2007)); see also *Stumph v. Thomas & Skinner, Inc.*, 770 F.2d 93, 97 (7th Cir.1985) (reversing summary judgment for employer in reliance on the "statement of another co-employee who stated that she retired early because the [employer] made her 'feel unwelcome in [her] job because of [her] age.'") and *O'Sullivan v. City of Chicago,* 2007 WL 671040, *8 (N.D.Ill.2007) ("Other-acts evidence, such as discriminatory acts directed at employees other than the plaintiff, may be relevant … to prove… intent or pretext."). Whether such evidence is relevant depends on a variety of factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case. *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008).

Two other former supervisory employees, Ms. Huber and Ms. Daniels, filed charges alleging that their respective separations from FVPD were the result of age discrimination. (SOAF ¶9) All are in the same protected group, worked at Prisco under the same supervisors, and experienced similar age discrimination within months of one another. (*Id*. ¶10) They all observed age bias from Ms. Mulready and a change at FVPD, when older employees were forced out and treated poorly and replaced by younger employees who were treated in materially better ways. (*Id.*) This closely related evidence of other acts of age discrimination against older workers at FVPD undercuts FVPD's effort to obtain summary judgment because a reasonable fact finder may infer an intent to discriminate from this circumstantial evidence that other older employees were also discriminated against because of their age.

### e. Solid Performance and Effective Discipline Supports a Finding of Pretext

Ms. Steele's long, favorable and effective employment history and FVPD's quick jump to termination -- instead of engaging its established discipline practices – clearly gives rise to the inference of discrimination. *Vega*, 954 F.3d at 1004, citing *Hanners v. Trent*, 674 F.3d 683, 694 (7th Cir. 2012). Furthermore, failure to follow normal disciplinary procedures may be considered in deciding whether an action was taken for an unlawful motive. *Futrell v. J.I. Case*, 38 F.3d 342, 348-49 (7th Cir. 1994) (identifying the failure to follow disciplinary procedures as one piece of evidence among others creating a jury question regarding pretext).

Ms. Steele was with FVPD for almost 20 years. (SOAF ¶1) She was repeatedly promoted, received positive appraisals, and was awarded merit-based raises. (*Id.*) At her last performance appraisal, dated December 20, 2016, less than six months before her termination, Ms. Steele was rated as "Meeting, and Sometimes Exceeding, Expectations." (*Id.* ¶3) FVPD has a policy requiring "whenever possible" to "resolve disciplinary and/or performance issues by use of verbal, written or other forms of coaching and/or counseling." (RSOF ¶6). The process is designed to encourage development and provide employees with a reasonable amount of time to improve performance. (*Id.* ¶6) The District also uses the Performance Improvement Plan ("PIP") to give employees the chance to improve, the tools to succeed, and to set explicit performance goals. (SOAF ¶37 and RSOF ¶74) If FVPD did not put an employee on a PIP, it had no interest in helping the employee to improve performance. (SOAF ¶3)

The evidence in the record demonstrates that when FVPD adhered to its regular disciplinary procedure and stated goals it was effective. For example, in 2012, Plaintiff was placed on and successfully completed a PIP. (SOAF ¶1) In February of 2017, she was verbally coached by Ms. Jansen and Mr. Hayes to change her dance room reservation practices. (SOAF ¶18) Once advised, Ms. Steele adopted the directive and there is no evidence in the record that

dance room reservations presented any further an issue after she was coached. (*Id*.) In May of 2017, FVPD discovered that Ms. Steele had entered incorrect information into RecTrac and issued her a written warning. (*Id*. ¶19) After Ms. Steele was advised that there was incorrect information in RecTrac, she went back into the software program to make corrections and fix any issues. (RSOF ¶51) There is no evidence in the record that Ms. Steele entered incorrect information into RecTrac after the written warning.

Then on June 9, 2017, Ms. Mulready sent an email with an assignment to Ms. Steele, Ms. Jansen, Ms. Huber, and Mr. Martinez. (RSOF ¶58) Ms. Steele did not respond to the email until June 13th. (SOAF ¶23) The next day, FVPD terminated Ms. Steele. (RSOF ¶ 61) According to Ms. Mulready, this delay demonstrated a lack of follow through and led to the termination. (SOAF ¶24) There is no evidence in the record to establish that Ms. Steele was previously disciplined for failing to respond to emails in a timely way. At the termination meeting Ms. Steele asked for another chance and to be put on a PIP, but FVPD refused. (SOAF ¶28) FVPD claims it did not believe that Ms. Steele could improve, but evidence in the record proves otherwise. (Dkt. 65 pg.1) If FVPD's true goal was to see Ms. Steele improve, they would have continued to follow their established and effective performance disciplinary procedure, but they elected to jump right to termination. As articulated in *Vega*, *Hanners, Futrell*, A reasonably juror could infer pretext and discriminatory motives from these facts.

### f. FVPD's Exaggerations and Inaccuracies are Evidence of Pretext

FVPD claims Ms. Steele was terminated because she failed to meet "legitimate expectations" by making the "same mistakes" over multiple programming seasons. (Dkt. 65 at pgs. 4-5, 6 and13) Such characterizations are contested and inaccurate exaggerations which may be viewed as evidence of pretext, inferring discrimination. *Vega*, 954 F.3d at 1004, citing *Harden*

v. *Marion Cty. Sheriff's Dep't*, 799 F.3d 857, 866 (7th Cir. 2015), see also *Ajmiller v. Eli Lilly & Co.*, 1:10-cv-1665-JMS-TAB, at *13 (S.D. Ind. July 30, 2012) (employer's exaggerations support finding of pretext) and *Peirick v. Indiana*, 510 F.3d 681, 693 (7th Cir. 2007) (employer's exaggerations create questions of fact as to the basis of termination). See also *Shager,* 913 F.2d at 402 (reversing summary judgment where age discrimination plaintiff showed his alleged deficiencies to be exaggerated and offset by his overall performance.).

### i. February 2017 Dance Rooms

FVPD claims that Ms. Steele missed a deadline to enter dance room reservations in the recreation software program in February of 2017. (SOAF ¶¶16-17, RSOF ¶37-38, 40) A reasonable tier of fact may conclude that such a claim is an inaccurate exaggeration because no "deadline" was missed. Ms. Steele, programming dance classes for years, had a practice to reserve rooms when the seasonal programing finalized. (SOAF ¶18) These facts are corroborated by Ms. Daniels and Ms. Real. (SOAF ¶¶16-17, RSOF ¶37-38, 40) FVPD admits that Ms. Steele's job responsibilities did not change when RecTrac was implemented, but Ms. Jansen and Mr. Hayes, both new to the dance programing process, asked Ms. Steele to change her practice and reserve the rooms during the initial phase. (RSOF ¶¶21, 37-38, 40) Once given the directive to change her practice, Ms. Steele did so. (SOAF ¶18) It is reasonable to infer a lack of legitimacy in FVPD's claim that Ms. Steele missed a "deadline" under these circumstances. To the contrary, Ms. Steele was following established procedure.

### ii. May 2017 RecTrac Entries

Furthermore, it is reasonable to infer a lack of reasonableness in FVPD's alleged legitimate expectation that Ms. Steele master the complicated RecTrac programming without adequately training her. FVPD claims that Ms. Steele received adequate training (Dkt. 65 pgs. 6 and 12), but

at least as early as December of 2016, FVPD was aware that Ms. Steele wanted and needed more training on the complicated RecTrac program put in place by Mr. Donahue. (SOAF ¶12-13) By that time, Mr. Donahue was gone and Ms. Jansen was supposed to provide the additional training, but did not. (*Id*. ¶13) Recreation management told Ms. Steele that they would "work as a team to ensure everything is done accurately and effectively" in RecTrac. (*Id*. ¶12) Ms. Steele asked for additional training many times, but her requests went unanswered. (SOAF ¶13 and RSOF ¶¶45, 55, 62, 66) A trier of fact may infer that it was not reasonable to expect perfect RecTrac performance from Ms. Steele to when it knowingly withheld training on the system.[1]

Additionally, FVPD's description of the basis of the May 2017 corrective action is a gross exaggeration. According to Ms. Mulready, the discipline was issued because FVPD was "flooded with complaints" about incorrect information during Summer Registration day, that it "caused a lot of problems," and that there was "a lot of upset parents[.]" (SOAF ¶19) But Ms. Mulready was not at work that day and said she got this information from Ms. Huber, who was. (*Id*. ¶20) Ms. Huber testified that there was only one complaint, which was quickly addressed and resolved. (*Id*.) Then, Ms. Mulready claimed that she "corrected much of the inaccurate information" entered by Ms. Steele. (*Id*. ¶21) But FVPD's own audit shows that Ms. Mulready made only one change. (*Id*.) FVPD exaggerated the complaints and the amount of additional work in a thinly veiled attempt to validate punishing Ms. Steele when it had not adequately trained her.

    **iii.  June 2017 Word Proof**

Similarly, a reasonable fact finder may infer inaccuracy in the claim that Ms. Steele "missed a deadline" that no longer existed. FVPD claims a "missed a deadline" on June 7, when

---

[1] This inference was explained by this Court in *Steele v. Fox Valley Park Dist.*, No. 19-cv-05334, at *11 (N.D. Ill. Sep. 2, 2020), "[Ms. Steele] didn't meet expectations *because* she didn't have what she needed, and she didn't have what she needed *because* FVPD discriminated against her."

she turned in an assignment about one hour late and did not submit it to Ms. Jansen before providing it to Ms. Mulready. (SOAF ¶22 and RSOF ¶54) First, when the assignment was due is a contested issue of fact. (RSOF ¶¶54-55) Ms. Steele testified that she obtained Ms. Jansen's approval to turn the assignment in late. (SOAF ¶22) Moreover, Ms. Mulready testified that "It didn't seem as though there was an issue" and "[a]n hour late to me with a deadline isn't terribly concerning." (SOAF ¶22) Under these facts, it is reasonable to say that FVPD's claim that a deadline was missed is an inaccurate exaggeration of actual events manufactured to endorse termination.

### iv. June 2017 Email

Finally, a trier of fact may infer that it was not reasonable for FVPD to expect Ms. Steele to respond to an email about an assignment that Ms. Jansen told her was complete nor reasonable to infer that Ms. Steele missed a "deadline" the day before her termination. FVPD claims Ms. Steele showed a lack of follow through when she waited four days to respond to a June 9th email from Ms. Mulready. (SOAF ¶23) The next deadline was scheduled for June 26. (SOAF ¶23) Ms. Steele admits to the four days, until June 13, but explains that it was unclear to her that there was an assignment to complete because Ms. Jansen advised her that the work was done. (SOAF ¶24) When, on June 13, Ms. Jansen clarified that different work needed to be done, Ms. Steele promptly completed the assignment in less than a day. (*Id.*) Under these facts, a trier of fact may infer that FVPD's claim of lack of follow through, or missed deadline, are false or exaggerated.

Nonetheless, "where the issue is whether the plaintiff was singled out for discipline based on a prohibited factor, it makes little sense to discuss whether she was meeting her employer's reasonable expectations." *Curry v. Menard, Inc.*, 270 F.3d 473, 477-78 (7th Cir. 2001) See also *Oest v. Ill. Dep't of Corr.,* 240 F.3d 605, 612 n. 3 (7th Cir. 2001) ("legitimate expectations" prong

of the *prima facie* test is unnecessary for the analysis, where the people judging the plaintiff's performance were the same people accused of discriminating against her.) Ms. Steele alleges judgment by the very same people who discriminated against her. Thus, the legitimacy of Ms. Jansen and Ms. Mulready's opinions about Ms. Steele's performance are in question.

### g. Discrepancies about the Decision to Terminate are Evidence of Pretext

Explanations about how Ms. Steele's termination came to pass change, depending on who and when the question is asked. Inconsistent statements about the identity and roles of decision makers may "appropriately be considered circumstantial evidence of a discriminatory motive[.]" *Equal Employment Opportunity Commission v. RJB Properties, Inc.*, 857 F. Supp. 2d 727, 774 (N.D. Ill. 2012). See also *E.E.O.C. v. C.G. Schmidt, Inc.,* 670 F. Supp. 2d 858, 868 (E.D. Wis. 2009) (shifting statements regarding the identity and roles of decision makers supported an inference of impermissible motive).

According to the District, Ms. Mulready, Ms. Jansen, and Mr. Hayes, "drove the decision to terminate," and the termination memorandum, from and signed by Ms. Mulready and Ms. Jansen, was "reviewed" and "approved" by Ms. Fenton and Ms. Ijams. (SOAF ¶25 and RSOF ¶64) FVPD also testified that Ms. Mulready and Ms. Jansen are the ones who terminated Ms. Steele. (SOAF ¶25). However, according to Ms. Mulready, "terminating did not come from myself or Lauren [Jansen]." (SOAF ¶26) Ms. Mulready refused to answer questions about her role, but then, after FVPD counsel took a break while the question was pending, Ms. Mulready stated, "I did not drive the decision." (SOAF ¶26) FVPD claimed that high levels of review and approval were obtained from administrators. (RSOF ¶65) But when deposed, FVPD admitted that while the subject was brought to the administrators, no one conducted any investigation because the directors just "trust the judgement of our superintendent [of HR] to properly evaluate[.]" (*Id.*)

FVPD's inconsistent statements about the identity of the decisionmakers and what, if any, meaningful role the alleged decisionmakers played in the decision to terminate Ms. Steele gives rise to the inference of a discriminatory motive and a finding of pretext.

### h. **Mr. Martinez is a Comparator Who Was Treated Better Than Ms. Steele**

If missing deadlines, lack of attention to detail and lack of follow through were in fact terminable offenses, Mr. Martinez, age 34, should have met the same fate as Ms. Steele, age 61. There is evidence in the record that Mr. Martinez engaged in similar and even more egregious transgressions. This evidence supports a finding of pretext. *Curry*, 270 F.3d at 479. ("A showing that similarly situated employees were treated differently may be enough to establish pretext.").

It is well established that disparate discipline, or evidence that defendant applied its legitimate expectations in a disparate manner, may support an inference of age discrimination. *Morris v. BNSF Ry. Co.,* No. 15 C 2923 (N.D. Ill. Oct. 2, 2018), aff'd by *Morris v. BNSF Ry. Co.,* 969 F.3d 753 (7th Cir. 2020) *Montgomery v. Am. Airlines*, *Inc.*, 626 F.3d 382, 394 (7th Cir. 2010), *Coleman v. Donahoe*, 667 F.3d 835, 846, 851 (7th Cir. 2012), *Mirocha v. Palos Cmty. Hosp.,* 240 F. Supp. 3d 822 (N.D. Ill. 2017), and *Volovsek v. Wisconsin Dep't of Agriculture, Trade & Consumer Protection,* 344 F.3d 680, 689 (7th Cir.2003). In a case involving disparate discipline, the conduct of the comparators must be of "comparable seriousness," and a "precise equivalence" is not required. *Coleman*, 667 F.3d at 851. "[D]istinctions can always be found in particular job duties or performance histories or the nature of the alleged transgressions", but distinctions are not problematic unless they "render the comparison effectively useless." *Humphries v. Cbocs West*, 474 F.3d 387, 405 (7th Cir. 2007). A single comparator will do; numerosity is not required and, because "there is no magic formula", it is enough to show "similar — not identical — conduct". *Id*. at 405. Whether a comparator is similarly situated is typically a question for the fact finder.

*McDaniel v. Progress Rail Locomotive*, 940 F.3d 360, 368-69 (7th Cir. 2019) (internal citations omitted).

Despite FVPD's protestations (Dkt. 65 pg. 9), Mr. Martinez and Ms. Steele are similarly situated comparators. They were both Recreation Supervisors at Prisco, at the same time, and supervised by Ms. Mulready, under the direction of Mr. Hayes, Ms. Fenton and Ms. Ijams. (SOAF ¶14-15 and 35-40). They had substantially similar jobs, duties and responsibilities. (SOAF ¶39) They were subject to the same standards and policies. (*Id*. ¶40 and RSOF ¶6) According to FVPD, they engaged in similar conduct, and both were alleged to have missed deadlines, lack attention to detail and lack follow through. (SOAF ¶¶16, 38, and 40) In December of 2016, they were both rated as meeting and sometimes exceeding FVPD expectations. (*Id*. ¶40). But, in 2017, Ms. Steele was coached, issued one corrective action, and terminated. (SOAF ¶¶16-18 and 25) In 2017, Mr. Martinez was issued two corrective actions, then put him on a PIP. (SOAF ¶¶35-38)

Pretext is established when the reason stated for was insufficient to warrant the adverse employment action. *Bahl v. Royal Indemnity Company,* 115 F.3d 1283, 1291 (7th Cir. 1997). If FVPD it to be taken at its word, that a lack of attention to detail, missed deadlines and lack of follow through is sufficient to warrant termination, then Mr. Martinez should have been fired. If it was sufficient to warrant Ms. Steele's termination is would have also warranted Mr. Martinez's. The facts in the record establishing the disparate treatment between Mr. Martinez and Ms. Steele are particularly compelling evidence of pretext in this case.

i. **Evidence of Events Which Occurred Beyond the 300 Days is Admissible**

Plaintiff seeks to recover damages because of a discriminatory termination. (Dkt. 18 ¶75) The evidence of age discrimination evidence beyond the 300 days is admissible to explain and provide context. "[E]vidence of earlier discriminatory conduct by an employer that is time-barred

is nevertheless entirely appropriate evidence to help prove a timely claim based on subsequent discriminatory conduct by the employer" *Mathewson v. Nat'l Automatic Tool Co.*, 807 F.2d 87, 91 (7th Cir. 1986) (jury properly considered evidence of plaintiff's demotion outside the limitations period), see also *J.Y. v. Dothan City Bd. of Educ.*, 2014 LEXIS 43687, *26 (M.D. Ala. Mar. 31, 2014)("Statutes of limitations operate only to bar claims that accrue outside the applicable limitations period; evidence that is relevant to establish claims that accrued within the limitations period is generally admissible"). Further, where acts of discrimination are part of an ongoing pattern and at least one of the acts occurred within the relevant limitations period the evidence of those acts is admissible. *Tinner v. United Ins. Co. of Am.*, 308 F.3d 697, 707 (7th Cir. 2002) (discussing theories under which a continuing violation may be established). Accordingly, the Court and the jury may consider evidence of events beyond the 300 days to the extent that they provide circumstantial evidence that Plaintiff's termination was the result of age discrimination.

## VI.     CONCLUSION

There are more than enough facts in the record setting forth circumstantial evidence of age discrimination permitting a reasonable finder of fact to infer that the proffered reasons for termination were pretextual and the real cause of the termination was Ms. Steele's age. When considering the evidence, and a whole, and drawing all inferences in Ms. Steel's favor, it is reasonable to infer that age played a role, was the determinative influence, and the but for cause of termination. This case is primed to let a jury decide and FVPD's Motion for Summary Judgment must be denied.

Dated: July 21, 2021

Respectfully Submitted By:
Attorney for Plaintiff, Roberta Steele

<u>/s/   Elissa Joy Hobfoll</u>
        Elissa Joy Hobfoll
        Herschman Levison Hobfoll PLLC
        401 South LaSalle Street
        Suite 1302-G
        Chicago, IL 60605
        Email: elissa@hlhlawyers.com